IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R.B. and E.B., parents and natural Guardians of P.B., a minor c/o SHAFFER & GAIER, LLC 1628 JFK Blvd., Ste. 400 Philadelphia, Pennsylvania 19103     Plaintiffs, <br><br> vs. <br><br> Bethlehem Area School District 1516 Sycamore Street Bethlehem, Pennsylvania 18017     Defendant | CIVIL ACTION <br><br><br><br><br><br><br> NO. 5:21-CV-00846 |

**DEFENDANT BETHLEHEM SCHOOL DISTRICT'S BRIEF
IN SUPPORT OF MOTION TO DISMISS**

I. **FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs filed a complaint against the Defendant, Bethlehem Area School District ("BASD") in this Honorable Court on February 24, 2021. Plaintiffs alleged that in the 2019-2020 school year, the Defendant School District transported their child, P.B., to Kindergarten on a BASD school bus. (Comp. ¶¶10, 11). The Complaint also alleges that an older student on the bus began bullying their child in September 2019. (Comp. ¶12). At some point in time, the younger child, P.B., told his father, Plaintiff R.B., about the bullying and Plaintiff R.B. informed the school bus driver, the school counselor and the teacher about the bullying. (Comp. ¶13.)

Next, the Complaint alleges that the older student began subjecting the Plaintiff's child, P.B., to sexual abuse on the school bus, between October 31, 2019 and December 23, 2019. (Comp. ¶14). More specifically, it is alleged that the older student pulled down P.B.'s pants,

licked, sucked and kissed his penis, licked his "butt hole," sucked and kissed his "butt cheek," kissed him on the lips, and inserted his fingers into P.B.'s "butt hole," and sometimes the older student pulled down his own pants and P.B.'s pants and inserted his penis into P.B.'s ear.   (Comp. ¶¶15, 16, 17).

In "late December, 2019," the young student, P.B. confessed to his parents what was happening.  (Comp. ¶19).  On December 30, 2019, Plaintiff R.B. and his child P.B. were interviewed by an investigator from the local police department and a report was made.  (Comp. ¶20).  On January 16, 2020, the older student and his mother were interviewed by the local police department.  (Comp. ¶21).  It is alleged that on this occasion, the older student admitted that he engaged in sexual assaults and incidents alleged in Paragraphs 15, 16 and 17 of the Complaint.  (Comp. ¶21).

The Complaint sets forth a single count of violation of the Fourteenth Amendment right to bodily integrity, pursuant to 42 U.S.C. §1983.   The Plaintiffs assert that the School District was "explicitly on notice" of the older student's violent tendencies toward P.B. and other students and failed to protect the students against the older student's misconduct on the bus, thereby placing P.B. in a dangerous situation.  (Comp. ¶18).

The School District has now timely filed a 12(b)(6) Motion to Dismiss the Complaint, requesting that this Honorable Court dismiss the Plaintiff's complaint for failure to state a claim upon which relief can be granted.

II. **QUESTION PRESENTED**

**WHETHER PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT?**

**Suggested Answer: Yes.**

III. **ARGUMENT**

**Standard of Review**

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1973, 167 L.Ed.2d 929 (2007). The plaintiffs must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. U.P.M.C. Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), *citing Iqbal*, 556 U.S. at 678. The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* At 211.

District courts presented with a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but should reject mere legal conclusions. Second, the District Court should determine whether the facts as alleged establish a "plausible claim for relief." *Iqbal*, 556 U.S. at 678. Thus, a complaint must "show an entitlement to relief with facts, as a mere allegation that a plaintiff is entitled

to relief is insufficient to withstand a motion to dismiss. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008).  As the Supreme Court noted in *Iqbal*, [w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of the misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678.   This plausibility determination will be a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; see also, *Fowler*, 578 F.3d at 210-211.

Count Twenty-Six (26) of Plaintiffs' complaint proposes to allege a claim via 42 U.S.C. §1983, for a violation of the right to bodily integrity under the Due Process Clause of the Fourteenth Amendment.  (Comp., ¶¶ 26-28).  It appears that Plaintiffs are attempting to plead that the School District is liable because of a "special relationship" that Plaintiffs' contend is custodial in nature, so as to make the School District liable under the Due Process Clause of the Fourteenth Amendment.  (Comp. ¶¶ 32, 33)  Plaintiffs also appear to be proposing that the School District is liable under the "state-created" danger doctrine by contending that the School District was aware of a known risk to the Plaintiffs' child because of prior actions of the older student, by placing the younger student on a moving bus with the older student and thereby taking them into custody, by doing so in willful disregard of the younger student's and other students' safety, and by failing to supervise the students on the bus and failing to train employees regarding policies for supervising persons on the bus.  Thus, argue the Plaintiffs, the School District increased the risk of harm to the Plaintiff's child, P.B., such that the risk was greater than it would have been if the School District had not placed the Plaintiffs' child on the school bus.  (Comp. ¶¶ 29-38).

Plaintiffs' complaint is replete with legal conclusions couched as facts and factual contentions that do not do enough to raise Plaintiffs' right to relief above the speculative level.

Plaintiffs' complaint contains insufficient facts to establish that Defendant BASD violated Plaintiffs' child's constitutional Due Process rights under the Fourteenth Amendment. Although substantive due process protects an individual's liberty interest in bodily integrity, the Due Process clause of the Fourteenth Amendment does not impose an affirmative duty upon the state or any state actor, such as a school district, to protect its citizens. Rather, it serves as a limitation on the state's power to act. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989); *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, (3d Cir. 1992) (en banc) ("*Middle Bucks*"). There are two exceptions to this general rule, but the requirements of being within either one of these exceptions are not satisfied by the allegations in the Complaint.

**The Special Relationship Exception**

The first exception is commonly known as the "special relationship" exception, which exists in certain limited circumstances when the Constitution imposes upon the State the affirmative duties of care and protection with respect to particular individuals. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). (recognizing Eighth Amendment affirmative duty of state actor to provide adequate medical care for prisoners). *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (recognizing Fourteenth Amendment affirmative duty of state actor to provide involuntarily committed mental patients necessary services to ensure their reasonable safety from themselves and others). In

*Middle Bucks*, the plaintiffs argued that the state's compulsory school attendance laws acted in combination with statutorily conferred *in loco parentis* authority to restrain a student's liberty such that the student was left without reasonable means of self-protection. *Id*. At 1370-1371. The Third Circuit held that neither the compulsory attendance laws nor the *in loco parentis* authority conferred upon teachers and principals by the Pennsylvania School Code operated to create the kind of special relationship that would bring the school's relationship to a student into the "special relationship" exception referenced in *DeShaney*, *supra*.

In the complaint, the Plaintiffs contend that the School District's act of placing their child on the moving school bus was "custodial" in nature, thereby suggesting to the Court that a special relationship similar to the one recognized in *Youngberg*, *supra*, was created. However, the Third Circuit has not recognized a special relationship between a student and school district or other school entity based on a student's presence on a moving school bus.

Additionally, a recent Third Circuit case, *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) (en banc), addressing a case that involved one student's series of insults, threats, bullying and physical assault of two other students over a period of seven months. *Id*., at 164. The student was disciplined by the School and ultimately adjudicated delinquent by a Juvenile court master, who ordered the student to have no contact with the other two students. *Id*. The school in Morrow suspended the offending student temporarily but later allowed her to return to school. After returning to the school, and notwithstanding the court's order to have no contact with the other two students, the offending student boarded the school bus on which the two students were transported home and threatened one of the two students. That same evening, the offender elbowed one of the two students in the throat. *Id*.

The Third Circuit reasoned as follows:

> "[A]fter our decision in *Middle Bucks*, the Supreme Court decided *Vernonia School District 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995).  There, the Court clarified the applicability of *DeShaney's* special relationship exception in the context of public schools. . . The Court then stated: '[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect.' *Id.* At 655, 115 S.Ct. 2386, *citing DeShaney*, 489 U.S. at 200, 109 S.Ct. 998.
>
> Although that statement is technically *dictum* we have previously explained that we cannot lightly ignore the force of Supreme Court *dicta*.  *See In re McDonald*, 205 F.3d 606, 612-613 (3d Cir. 2000). . . . Indeed, short of an actual holding on the precise issue here, it is difficult to imagine a clearer or more forceful indicator of the Court's own interpretation of *DeShaney* and the special relationship exception recognized there as applied to public schools. . . .
>
> In addition, every other Circuit Court of Appeals that has considered this issue in a precedential opinion has rejected the argument that a special relationship generally exists between public schools and their students.  See, e.g., *Hasenfus v. LaJeunesse*, 175 F.3d 68, 69-72 (1st Cir. 1999); *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 857-58, 863 (5th Cir. 2012) (en banc); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509-10 (6th Cir. 1996); *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 268, 272-73 (7th Cir. 1990); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 731-33 (8th Cir. 1993); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972-74 (9th Cir. 2011); *Maldonado v. Josey*, 975 F.2d 727, 729-33 (10th Cir. 1992); *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 568-69 (11th Cir. 1997).
>
> Accordingly, the Supreme Court's *dictum* in *Vernonia* as well as the consensus from our sister Circuit Courts of Appeals both reinforce our conclusion that public schools, as a general matter, do not have a *constitutional* duty to protect students from private actors.  We know of nothing that has occurred in the twenty years since we decided *Middle Bucks* that would undermine this conclusion."

*Morrow*, 719 F.3d at 169-71 (*emphasis in original*).

Thus, there is no support for Plaintiffs' contention, which we accept as true because we must for purposes of this Motion to Dismiss, that the School District's placement of their child on the school bus with an older child created the kind of special relationship that renders the School District liable for a violation of their child's Fourteenth Amendment Due Process Rights caused by the actions of another student.

**The State Created Danger Exception**

It has long been established that that the state owes no affirmative duty under the Constitution to protect citizens from the tortious or criminal acts of private individuals. *DeShaney*, 489 U.S. 189, 195-96. The exception to this principle applies when the state, through its actors, has created the danger to the plaintiff, thereby putting the plaintiff in a more dangerous place than the plaintiff would have been in had the state not acted at all. *Phillips*, 515 F.3d at 235. In such a case, the state may be found to violate the plaintiff's right to substantive due process under the Fourteenth Amendment, even in the absence of the special relationship of the kind that obligates the state to protect the plaintiff. *Morrow*, 719 F.3d at 166-67.

To establish a viable claim under the state-created danger theory, our Third Circuit precedent has demanded a close fit between positive state action and the resulting harm to the plaintiff. To prove a "state-created" danger claim, a plaintiff must prove the following four elements:

(1) The harm ultimately caused was foreseeable to the state and fairly direct;

(2) The state acted with a degree of culpability that shocks the conscience;

(3) A relationship between the state and the plaintiff exists such that the plaintiff was a foreseeable victim of the state's acts, or was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the general public; and

(4) The state actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that rendered the plaintiff more vulnerable to danger thatn had the state not acted at all.

*Morrow*, 719 F.3d at 177, citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

For liability to attach to the School District under 42 U.S.C. §1983, Plaintiffs must demonstrate that the violation of his rights was caused by a policy, custom or practice of BASD. *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658 (1978). To satisfy the pleading standard, a plaintiff must identify a custom or policy and specify what exactly that custom or policy was. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). If a plaintiff alleges that he was harmed by a custom, as opposed to a formally enacted policy, "custom requires proof of knowledge and acquiescence by the decisionmaker." *Id*. Failure "to allege conduct by a municipal decision maker" is "fatal" to a *Monell* claim. *Id*. See also *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 and n.11 (3d Cir. 2010) (reasoning that plaintiff has the obligation to plead that the decisionmaker had final policy-making authority, because it is a key element of a *Monell* claim.). In addition, a plaintiff must establish causation by properly pleading that the municipality's policy or custom "was the source of his or her injury." *Santiago*, 629 F.3d at 135.

Plaintiffs have failed to state a claim within the state-created danger exception to the general rule that the Fourteenth Amendment protects individuals from harm caused by the state, and not other citizens. Plaintiffs have failed to allege with specificity any customs, policies or practices of the School District and Plaintiffs have failed to identify what the policy, custom or practice was. In addition, the Plaintiff has not identified any policymaker in the Complaint, which is 'fatal' to a *Monell* claim. *McTernan*, 564 F.3d at 658.

By contrast, Plaintiffs' Complaint has alleged actions which did <u>not</u> cause harm, such as transporting their child to and from school on a school bus, failures to take action, such as

failing to train employees, and legal conclusions, such as "Defendant acted intentionally or with deliberate indifference to [their child]." (Comp. ¶¶ 18, 29, 30, 32, 33, 34, 35 36, 38, 40). Plaintiff has not identified any affirmative action take by the School District that has created or increased a danger to the Plaintiffs' child.  The Third Circuit has held that a school district's failure to train teachers or employees to respond to assaults, or to investigate and stop assaults are no affirmative actions that can give rise to Due Process liability.  (underlining added for emphasis). *Middle Bucks*, 922 F.2d at 1375-76.

The requirements of the exception are not met with the Plaintiffs' allegation that the School District knew that the older student engaged in bullying toward their child because Plaintiff R.B. told the bus driver, the school counselor and the teacher about the bullying. (Comp. ¶13).  It has been established since the Supreme Court entered its decision in *DeShaney* that an affirmative duty to protect does not arise from the state's knowledge of the individual's predicament (in this case, the predicament would be caused by the alleged actions of the older student toward P.B.). *DeShaney*, 489 U.S. at 197, 200.  Rather, liability under the Due Process Clause of the Fourteenth Amendment requires affirmative state action and not a mere failure to protect. *Bright*, 443 F.3d at 284.

Third Circuit caselaw has made clear that, under the fourth element of the state-created danger theory, liability is predicated upon the state's affirmative actions which work to the plaintiff's detriment and expose the plaintiff to danger. *Bright*, 443 F.3d at 282.  It is a misuse of state authority, as opposed to a failure to use state authority, that can violate the Due Process Clause. *Id.*  For this reason, the Third Circuit has repeatedly rejected state-created danger claims in cases involving student-on-student school violence, even where school officials were alleged to have known of the dangerous conditions that ultimately resulted in injury to the

plaintiff, when the schools did not affirmatively act to create the danger. *Frazer v. Temple Univ.*, 25 F.Supp.3d 598, 610 (E.D. Pa. 2014), citing *Morrow*, 719 F.3d at 178-179; *Brown v. School District of Philadelphia*, 456 Fed. Appx. 88, 89-90 (3d Cir. 2011).

### IV. CONCLUSION

For all of the reasons set forth above in this brief, the Motion to Dismiss of the Defendant Bethlehem Area School District should be granted and Plaintiff's Complaint should be dismissed in its entirety.

KING, SPRY, HERMAN, FREUND, & FAUL LLC

/S/ John E. Freund, III
John E. Freund, III
Elizabeth M. Kelly
One West Broad Street, Suite 700
Bethlehem PA 18018
ID No. 25390
ID No. 75167
610.332.0390
jef@kingspry.com